```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ISLAMIC COMMUNITY CENTER FOR MID          :
WESTCHESTER, MOHAMMAD ZUBER               :
NAKADAR, OMAR OCKEH, ARSHAD               :
SHARIFF, SYED KAMAL, ALI                  :
NAWAZUDDIN, MOHAMMED SOHAIL,              :
ALI EL-OUSROUTI, FAVZUL KABEER,           :
ISMET JASHARI, and MOHAMMED               :
RAHEEM,                                   :
              Plaintiffs,                 :       OPINION AND ORDER
                                          :
v.                                        :       16 CV 7364 (VB)
                                          :
CITY OF YONKERS LANDMARK                  :
PRESERVATION BOARD; THE CITY OF           :
YONKERS PLANNING BUREAU, aka CITY         :
OF YONKERS PLANNING BOARD; THE            :
CITY OF YONKERS; MAYOR MICHAEL            :
SPANO in his official capacity as Mayor of the :
City of Yonkers; LIAM J. MCLAUGHLIN,      :
DENNIS SHEPHERD, MIKE BREEN, and          :
JOHN LARKIN in their official capacity as :
members of the City of Yonkers City Council; :
and GORDON A. BURROWS, in his official    :
capacity as a District County Legislator in the :
City of Yonkers,                          :
              Defendants.                 :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiffs Islamic Community Center for Mid Westchester ("ICCMW"), Mohammad Zuber Nakadar, Omar Ockeh, Arshad Shariff, Syed Kamal, Ali Nawazuddin, Mohammed Zohail, Ali El-Ousrouti, Favzul Kabeer, Ismet Jashari, and Mohammed Raheem bring this action against defendants City of Yonkers Landmark Preservation Board (the "Landmark Preservation Board"); the City of Yonkers Planning Bureau, also known as the City of Yonkers Planning Board (the "Planning Bureau"); the City of Yonkers; Mayor Michael Spano, in his official capacity as Mayor of the City of Yonkers; Liam J. McLaughlin, Dennis Shepherd, Mike Breen,

and John Larkin, in their official capacities as members of the City of Yonkers City Council; and Gordon A. Burrows, in his official capacity as a District County Legislator in the City of Yonkers, claiming defendants violated their rights under the United States Constitution; the New York State Constitution; the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc; the New York Civil Rights Law § 40-c; and the New York Civil Practice Law and Rules, Article 78, N.Y. C.P.L.R. § 7801 et seq., by discriminating against plaintiffs on account of plaintiffs' religious affiliation.

Before the Court are plaintiffs' motion for a preliminary injunction (Doc. #21), motion to strike certain documents from the record (Doc. #54), and motion for leave to file a supplemental complaint (Doc. #62), and defendants'[1] motion to dismiss to complaint. (Doc. #38).

For the reasons set forth below, defendants' motion to dismiss is GRANTED and plaintiffs' motions for a preliminary injunction, to strike, and for leave to file a supplemental complaint are DENIED.

## BACKGROUND

In deciding the pending motions, the Court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in plaintiffs' favor. Except as otherwise noted, the following facts are drawn from the complaint.

ICCMW is a religious non-profit entity established in 2012 by a group of Muslims in Westchester County to provide religious services for their community. The remaining plaintiffs are Muslim individuals involved in ICCMW, including founding members and board members.

---

[1] Defendant Burrows appears not to have been served with the summons and complaint and has not appeared in this action. The motion to dismiss is made on behalf of all defendants except Burrows.

Defendant City of Yonkers is a City in New York State. The Landmark Preservation Board and the Planning Bureau are governmental agencies of the City of Yonkers. Defendant Spano is the Mayor of the City of Yonkers. Defendants McLaughlin, Shepherd, Breen, and Larkin are Republican members of the City of Yonkers City Counsel. Defendant Burrows is a Republican legislator and minority whip of the Westchester County Board of Legislators.

Part of ICCMW's mission is to establish a permanent Mosque and Islamic center to serve Muslims residing in the mid-Westchester area. In April 2013, ICCMW identified a property listed for sale at 20 Grandview Boulevard in Colonial Heights neighborhood of Yonkers, which contained a house (the "Property"). ICCMW purchased the Property in March 2015, after some discussion with the City of Yonkers regarding ICCMW's anticipated use of the Property as a Mosque. According to plaintiffs, a "Mosque, such as the one [plaintiffs] wish to build on the Property serves as the cornerstone of Muslim faith and community. It is a place of communal prayer." (Compl. ¶ 41). A Mosque is "a most critical institution through which Muslims educate themselves and their children in the tenets and practice of Islam. The Mosque serves as the focus for the community's social, education, and recreational activities." (Compl. ¶ 41).

On September 19, 2015, ICCMW held an open meeting with the Colonial Heights community and invited residents and area organizations, including the Colonial Heights Association of Tax Payers ("CHAT"). Yonkers officials had previously informed ICCMW that CHAT "had a history [of] opposing projects like ICCMW's." (Compl. ¶ 54). Some attendees expressed concern about establishing a Mosque on the Property.

According to plaintiffs, ICCMW and its members have experienced animosity and hostility from the public on various occasions. Examples of such occurrences include having the local police visit the property for undisclosed reasons, finding dog waste near the Property on

several occasions, "people looking at [ICCMW's members] suspiciously as they walked by the property," "people driving by the [P]roperty menacingly," and having "derogatory curse words said to [an ICCMW member] by a stranger driving by the [P]roperty." (Compl. ¶ 59).

Plaintiffs allege there became an effort to designate the Property as a landmark pursuant to the City of Yonkers's Historic and Landmark Preservation Law (the "Landmark Law"), City of Yonkers, N.Y. City Code § 45, which was and "is a pretext used to prevent ICCMW, its members and its congregation from building a Mosque." (Compl. ¶ 72).

Between June and October 2015, CHAT submitted three applications to the Landmark Preservation Board to have the Property designated as a landmark pursuant to the Landmark Law. CHAT submitted the third application on October 27, 2015, in the form of a supplement to the second application. The Landmark Preservation Board conducted hearings on November 11 and December 2, 2015, to consider CHAT's application. At the December 2 hearing, ICCMW submitted a letter stating CHAT's landmark application was deficient. The Landmark Preservation Board put ICCMW's letter on the record, but did not permit ICCMW to present its position during the hearing. At the hearing, "[t]he Landmark Preservation Board approved CHAT's application as complete and referred it to the Planning Board for an advisory recommendation and advice pursuant to" the Landmark Law. (Compl. ¶ 66). On January 13, 2016, the Planning Board recommended that the Property be designated as a landmark, which imposes burdens and restrictions on the Property. That recommendation included a finding that another house of worship was unnecessary given the presence of other religious institutions in the area.

On February 3, 2016, the Landmark Preservation Board held the first public hearing on designating the Property as a landmark, at which time members of the public expressed concern

about the Property being used as a Mosque. Counsel for ICCMW spoke at the hearing and argued that the Property failed to satisfy Section 45-2 of the Landmark Law, which defines a landmark as a building or parcel of land that "(1) Is associated with persons or events of historic significance; (2) Is illustrative of historic growth and development; (3) Embodies distinctive characteristics of a type, period or method of construction or represents a work of master; [or] (4) Contains unique architectural, archaeological or artistic qualities." ICCMW members spoke at the hearing about their organization and questioned the public's "sudden interest in the [P]roperty, while for years prior to ICCMW's purchase it was allowed to fall into disrepair." (Compl. ¶ 71). CHAT supporters booed and interrupted ICCMW's presentation, "trying to bully ICCMW." (Compl. ¶ 71).

On April 6, 2016, the Landmark Preservation Board found the Property was "illustrative of growth and development of the city and had unique architectural qualities," and recommended the designation of the Property as a landmark. (Compl. ¶ 74). According to plaintiffs, other homes near the Property exhibit similar characteristics illustrative of growth and development, but have not been designated as landmarks.

On May 17, 2016, the Real Estate Committee of the Yonkers City Council held a public hearing, and CHAT and ICCMW presented their positions regarding the designation of the Property as a landmark. Defendant Larkin, the chair of the committee, limited discussion to the Property and the landmark criteria and "did not allow any discussion or reference of the evident Islamophobia at play." (Compl. ¶ 92). At the end of the hearing, the Real Estate Committee voted on the designation. By a three-to-two vote divided along party lines, with all Republicans in favor and all Democrats in opposition, the Real Estate Committee approved the designation and recommended the matter to the Rules Committee of the Yonkers City Council. Thereafter,

in a four-to-three vote, also divided along party lines, with all Republicans in favor and all Democrats in opposition, the Rules Committee recommended the landmark designation to the entire City Council for approval.

On May 24, 2016, the Yonkers City Council held a public hearing, at which the council members voted to approve the landmark designation, again along party lines, with all Republicans in favor and all Democrats against. On May 25, 2016, Mayor Spano held a meeting in which he heard from ICCMW and its supporters, who detailed the prior proceedings and the perceived anti-Muslim rhetoric that had been present. Letters were also submitted in opposition to designating the Property as a landmark. On May 27, 2016, Mayor Spano signed Resolution No. 64-2016 (the "Landmark Resolution"), which designated the Property as a landmark.

Plaintiffs allege "[t]he landmark designation arbitrarily targeted ICCMW." (Compl. ¶ 103). Plaintiffs further allege the Property's status as a landmark "establishes different standards for [p]laintiffs' proposed and future renovations to the [P]roperty than those that have been applied, and will continue to be applied, to similar proposed land uses" of other property owners. (Compl. ¶ 127). Plaintiffs do not allege any proposed or future renovations, or the process that plaintiffs would have to undergo to allow for such renovations.

Plaintiffs commenced this action on September 21, 2016. Thereafter, plaintiffs moved for a preliminary injunction declaring the landmark designation void (Doc. #21), defendants moved to dismiss (Doc. #38), and plaintiffs moved to strike certain documents from the record. (Doc. #54).

On May 1, 2017, plaintiffs moved for leave to file a supplemental complaint, to add a claim of First Amendment retaliation under 42 U.S.C. § 1983, and to add the allegations that follow. (Doc. #62).

6

Sometime in 2015, ICCMW applied for and received a property tax exemption from the City of Yonkers based on its status as a non-profit religious organization and the Property's use for religious purposes. On November 19, 2016, ICCMW submitted a renewal application for the exemption for the 2017/2018 tax year. On December 5, 2016, ICCMW was granted the exemption. On January 3, 2017, however, the property tax exemption was revoked. On January 26, 2017, ICCMW appealed the revocation.

On March 27, 2017, plaintiffs attended a hearing before the Board of Assessment Review (the "BAR"), which allegedly "functions under the office of the Mayor of the City of Yonkers." (Suppl. Compl. ¶ 114). At that hearing, plaintiffs explained their basis for the tax exempt status and responded to all of the BAR's questions. The BAR indicated it had sufficient information. On April 6, the BAR requested supplemental responses from plaintiffs, and plaintiffs allege this was harassment to retaliate against them. On April 13, plaintiffs responded by "rehashing information already in the [BAR]'s possession and knowledge." (Suppl. Compl. ¶ 116). On April 18, plaintiffs received a letter from defense counsel, which "attempted to force [p]laintiffs to provide information already within [defendants'] possession and addressed by [p]laintiffs at [the] March 27, 2017 hearing." (Suppl. Compl. ¶ 117). On April 20, 2017, plaintiffs responded by informing defendants they had already provided all relevant information.

According to defendants' memorandum of law in opposition to plaintiffs' motion for leave to file a supplemental complaint, the BAR issued a final decision on May 11, 2017, sustaining plaintiffs' administrative complaint and upholding the renewal of the Property's tax exempt status.

## DISCUSSION

I.  Plaintiffs' Motion for Leave to File Supplemental Complaint

Defendants argue the Court should deny plaintiffs' motion for leave to file a supplemental complaint because supplementation would be futile. Because, as set forth below, the Court finds defendants' argument regarding the lack of subject matter jurisdiction to be dispositive, it need not address defendants' remaining arguments in opposition to plaintiffs' motion.

A.  Legal Standards

Rule 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." The Court considers a Rule 15(d) motion for leave to file a supplemental complaint under the same framework as a Rule 15(a) motion for leave to amend a complaint. See, e.g., Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000) (affirming the district court's denial of plaintiffs' Rule 15(d) motion using law and analysis regarding Rule 15(a) motions). Although a district court should freely allow leave "on just terms," it may, in its discretion, "deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200–01 (2d Cir. 2007). Amendment is futile when the proposed supplement to the complaint could not withstand a motion to dismiss. See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001).

B. Subject Matter Jurisdiction

Defendants argue that granting leave to file a supplemental complaint would be futile because the Court does not have subject matter jurisdiction over plaintiffs' only supplemental cause of action, a First Amendment retaliation claim under Section 1983.

The Court agrees.

"'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (quoting Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978)). "A 'case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). The party invoking the Court's jurisdiction bears the burden of establishing that jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

When deciding whether subject matter jurisdiction exists at the pleading stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Conyers v. Rossides, 558 F.3d at 143. However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992) (citing Norton v. Larney, 266 U.S. 511, 515 (1925)). When a factual challenge to the Court's jurisdiction has been raised, "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits." Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000); accord, Makarova v. United States, 201 F.3d at 113 ("In resolving a

motion to dismiss for lack of subject matter jurisdiction . . . a district court . . . may refer to evidence outside the pleadings.").

Although the general rule is that federal district courts have subject matter jurisdiction over Section 1983 claims, there is (at least) one exception.

The principle of comity and the Tax Injunction Act, 28 U.S.C. § 1341, bar the Court from entertaining a Section 1983 claim that plaintiffs' First Amendment rights were violated through the imposition of state taxes. See, e.g., Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 107–17 (1981); Long Island Lighting Co. v. Town of Brookhaven, 889 F.2d 428, 431 (2d Cir. 1989) ("While it is the Tax Injunction Act that prevents federal courts from giving injunctive relief or declaratory relief, as long as there is a plain, speedy and efficient remedy in state court, it is the principle of comity that prevents a taxpayer from seeking damages in a § 1983 action if a plain, adequate, and complete remedy may be had in state court."[2] (citations omitted)).

Plaintiffs argue, in a single paragraph devoid of legal support or citation, that defendants' arguments "are misplaced and irrelevant" because "[p]laintiffs have not alleged any tax law issue or violation, [or] challenged the applicability of a state tax law, [and] [p]laintiffs have not sought to supplement an action seeking damages related to the collection of state taxes." (Doc. #66 at 10).

---

[2] Courts consistently hold and plaintiffs do not dispute that "the remedies available in the New York state courts are sufficient to protect plaintiffs' rights regarding tax assessment challenges." Henke v. City of Newburgh, 2012 WL 12883587, at *4 (S.D.N.Y. Apr. 30, 2012), aff'd, 519 F. App'x 55 (2d Cir. 2013) (summary order); see also Greenberg v. Town of Scarsdale, 2009 WL 7765836, at *4 (S.D.N.Y. Oct. 16, 2009) ("[I]t is well-settled that the remedies available in New York state courts are sufficient to protect a taxpayer's rights." (alteration and internal quotation marks omitted)) report and recommendation adopted, 2011 WL 1118709 (S.D.N.Y. Mar. 24, 2011), aff'd, 477 F. App'x 849 (2d Cir. 2012) (summary order).

The Court disagrees.

First, plaintiffs misunderstand the scope of the bar on a federal court's ability to entertain an action regarding a Section 1983 claim that defendants violated plaintiffs' rights through the imposition of state taxes. The Tax Injunction Act provides that "the district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Moreover, "[t]he Supreme Court has stated . . . that in a damage action pursuant [to Section] 1983 alleging that in administering a tax the state has violated a party's constitutional rights, principles of comity require the federal court to dismiss the claim." Moore v. Trippe, 743 F. Supp. 201, 209 (S.D.N.Y. 1990) (citing Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. at 116)). Together, the Tax Injunction Act and comity bar plaintiff's proposed supplemental cause of action.

Second, to the extent plaintiffs argue their claim is not "related the collection of state taxes," but rather is based on the revocation of tax exempt status, the Court fails to see how this distinction matters.[3] In either situation, the claim is that defendants administered the state tax system in a discriminatory way and therefore violated plaintiffs' constitutional rights. Comity and the Tax Injunction Act plainly bar the Court from adjudicating such a claim.

Third, plaintiffs' argument that they "have not alleged any tax law issue" is unpersuasive. For example, plaintiffs allege "the City of Yonkers retaliated by revoking [p]laintiffs' property tax exemption status," and therefore violated plaintiffs' First Amendment rights. (Suppl. Compl.

---

3   Moreover, this argument is disingenuous, as plaintiffs' allege the revocation "requires [p]laintiffs to pay thousands of dollars in taxes retroactively which they originally were exempt from" under New York law. (Suppl. Compl. ¶ 211). Thus, contrary to plaintiffs' position, their claim is one regarding the collection of state taxes.

¶ 208). The repeated allegations of retaliatory revocation of tax exempt status is unambiguously a tax law issue.

Accordingly, the Court does not have subject matter jurisdiction over plaintiffs' supplemental claim that defendants violated plaintiffs' First Amendment rights by revoking the property tax exemption in retaliation for filing the present action. Thus, granting plaintiffs' motion would be futile, and the motion is, therefore, denied.

II.   Defendants' Motion to Dismiss

Defendants move to dismiss plaintiffs' complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

  A.   Legal Standard[4]

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiffs' legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544,

---

[4]   The Court has already provided the relevant legal standard on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), which is applicable to defendants' motion to dismiss. (See supra pp. 9-10).

12

564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

B. Ripeness

The Court must first address defendants' argument that the Court does not have subject matter jurisdiction over this action because the dispute is not ripe. See, e.g., Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005) ("As we are obliged to do, we first consider the ripeness issue," before turning to the merits.). Because ripeness is a jurisdictional issue, the Court "must presume that [it] cannot entertain the [plaintiffs'] claims 'unless the contrary appears affirmatively from the record.'" Id. (quoting Hoehne v. Cty. of San Benito, 870 F.2d 529, 533 (9th Cir. 1989)).

The Court must determine whether plaintiffs' claims are facial or as-applied challenges, because facial challenges are automatically ripe, whereas as-applied challenges are subject to the final-decision requirement, as explained in detail below. See, e.g., Charette v. Town of Oyster Bay, 159 F.3d 749, 757 (2d Cir. 1998).

Plaintiffs argue their claims assert facial challenges to the Landmark Resolution, and thus are ripe for adjudication.

The Court disagrees. Plaintiffs' claims assert only as-applied challenges.

> A "facial challenge" to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual. An "as-applied challenge," on the other hand, requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right.

13

Field Day, LLC v. Cty. of Suffolk, 463 F.3d 167, 174–75 (2d Cir. 2006) (citation omitted).

Even a cursory review of the complaint and plaintiffs' arguments reveals that plaintiffs are challenging the application of the Landmark Law to them. Such challenges are plainly as-applied challenges. Plaintiffs' arguments to the contrary are belied by the fact that their complaint does not plead or explain how or why the Landmark Resolution is facially invalid; that is, unconstitutional or illegal on its face.[5]

Because plaintiffs assert only as-applied challenges, the Court must determine whether plaintiffs' claims satisfy the final-decision requirement and are therefore ripe for adjudication.

"Determining whether a case is ripe generally requires [the Court] to 'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" Murphy v. New Milford Zoning Comm'n, 402 F.3d at 347 (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967) overruled on other grounds, Califano v. Sanders, 430 U.S. 99 (1977)). That being said, this general analytic framework does not apply to land use disputes. See, e.g., Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, 915 F. Supp. 2d 574, 597 (S.D.N.Y. 2013). Instead, the Court must apply the first prong of the analysis the Supreme Court articulated in Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172 (1985). See Murphy v. New Milford Zoning Comm'n, 402 F.3d at 347–49 (noting the second prong applies only to takings claims based on land use, as that prong addresses whether plaintiffs received just compensation). The first prong of the Williamson County analysis applies to land use challenges under RLUIPA, the United States Constitution,

---

[5] For this reason, even if the Court were to accept plaintiffs' argument that they are challenging the Landmark Resolution as facially invalid, their claims must still be dismissed for failure to state a claim because the complaint completely fails to allege how the Landmark Resolution is, on its face, illegal.

14

and state law. See, e.g., Sunrise Detox V, LLC v. City of White Plains, 769 F.3d 118, 122 (2d Cir. 2014); Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, 915 F. Supp. 2d at 597–98 (collecting cases).

The first prong of the Williamson County analysis, also known as the final-decision requirement, "requires the [plaintiff] to obtain a final, definitive position as to the application of the relevant zoning law to the property from the municipal entity responsible for those laws." Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, 915 F. Supp. 2d at 597. That is to say, "plaintiff cannot seek federal court review of a zoning ordinance or provision until it has submitted at least one meaningful application for a variance" from the restrictions of the land-use laws. Id.

Here, plaintiffs have not yet received a final decision with respect to the landmarking of the Property. The Landmark Law provides processes by which the owners of a landmarked property can receive authorization to alter the property. First, Landmark Law Section 45-8 provides that owners may apply for a "certificate of appropriateness," and if the certificate is denied, it also provides for appellate review. Second, Landmark Law Section 45-10 provides that, if the certificate of appropriateness is denied in any respect, the owner may apply for relief based on economic hardship.

Plaintiffs argue (i) the Court should apply the general ripeness analysis, rather than the specific ripeness analysis for land-use claims, (ii) they need not seek a certificate of appropriateness or apply for economic hardship, because such steps would be futile, (iii) the ripeness inquiry does not apply when the claim is that the land-use restriction was imposed out of discriminatory animus, and (iv) the matter is ripe because there is no justification for requiring

15

plaintiffs to seek a certificate of appropriateness or economic hardship, as such a requirement would subject ICCMW to additional delays, expenses, and uncertainty.

The Court rejects each of these arguments.

First, plaintiffs argue that "because the landmark designation is now final, this Court should apply the traditional ripeness standard to [p]laintiffs' claims and enquire (1) whether the issues are fit for judicial decision and (2) hardship to the parties of withholding court consideration." (Doc. #48 at 10).

As already explained, the Second Circuit has specifically held that the traditional approach is not applicable to land-use disputes, and instead ripeness is to be determined under the final-decision requirement set forth in Williamson County.

Second, plaintiffs argue that seeking a certificate of appropriateness would be futile because plaintiffs would either have to submit an extensive application to the Landmark Preservation Board that would be subject to public hearings before "[t]he public that already had made . . . clear they do not want a Mosque" (Doc. #48 at 11), or submit the application to the Planning Board, which "has already made its final position clear on this matter with its January 13th Recommendation" (id.), which would also be subject to public hearings.

Plaintiffs misunderstand the futility exception to the final-decision requirement. "The futility exception was created to 'protect property owners from being required to submit multiple applications when the manner in which the first application was rejected makes it clear that no project will be approved.'" S&R Dev. Estates, LLC v. Bass, 588 F. Supp. 2d 452, 463–64 (S.D.N.Y. 2008) (quoting Kittay v. Giuliani, 112 F. Supp. 2d 342, 349–50 (S.D.N.Y. 2000), aff'd, 252 F.3d 645 (2d Cir. 2001)). Although a "plaintiff may avoid dismissal on ripeness grounds . . . by establishing the futility of pursuing administrative remedies, such as variances,

re-applications, or appeals to zoning boards[,] . . . the futility exception does not discharge . . . 'an owner's obligation to file one meaningful development proposal.'" Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, 915 F. Supp. 2d at 602 (citations omitted and quoting S. Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 504 (9th Cir. 1990)). "Therefore, the exception requires that at least one meaningful application be made in order to consider a claim ripe for adjudication." S&R Dev. Estates, LLC v. Bass, 588 F. Supp. 2d 452, 464 (S.D.N.Y. 2008). Plaintiffs have yet to apply for a certificate of appropriateness, appeal from an unfavorable ruling, or apply for economic hardship, and therefore the futility exception to the final-decision requirement is inapplicable.

Third, plaintiffs argue the ripeness inquiry does not apply when the claim is that the land-use restriction was imposed out of discriminatory animus, citing Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach, 727 F.3d 1349 (11th Cir. 2013).

Temple B'Nai is not binding on this Court, and its reasoning is unpersuasive given the existence of contrary Second Circuit precedent. Temple B'Nai analyzed ripeness using the traditional ripeness inquiry, rather than using Williamson County's final-decision requirement, which the Court has already explained is required in this circuit.

Finally, plaintiffs argue "the matter is ripe for this Court's consideration [because] there is no justification for requiring ICCMW to go before the Landmark Preservation Board or the Planning Board to seek a certificate of appropriateness or economic hardship before this Court may rule on its claims." (Doc. #48 at 12). But again, binding Second Circuit precedent requires plaintiffs to take such action. Any policy arguments against the Second Circuit's precedent are properly asserted before that court, not in the district court.

Accordingly, the Court grants defendants' motion to dismiss the complaint without prejudice because the claims asserted therein are not ripe.

III.     Remaining Motions

Because the Court denies plaintiffs' motion for leave to file a supplemental complaint and grants defendants' motion to dismiss, plaintiffs' motion for a preliminary injunction (Doc. #21) and defendants' motion to strike (Doc. #54) are moot and therefore must be denied.

## CONCLUSION

Plaintiffs' motion for leave to file a supplemental complaint is DENIED. (Doc. #62). .

Defendants' motion to dismiss is GRANTED. (Doc. #38).[6]

Plaintiffs' motion for a preliminary injunction is DENIED. (Doc. #21).

Defendants' motion to strike is DENIED. (Doc. #54).

The Clerk is instructed to terminate the motions (Docs. ##21, 38, 54, 62) and close this case.

Dated: June 28, 2017
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

[6]     Although defendant Burrows was not served in this case and therefore did not join the motion to dismiss (see n.1 supra), because the Court lacks subject matter jurisdiction, the case is dismissed as to Burrows as well.

18